IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

       Plaintiff,

  v.

JERMAINE EDMONDS,

       Defendant.

Criminal No. 12-0232
ELECTRONICALLY FILED

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Edmonds' Motion for Leave to Conduct Discovery in advance of his 28 U.S.C. § 2255 Motion. See doc. no. 202. The Government filed a Response to the Motion for Leave to Conduct Discovery (doc. no. 204), and Defendant filed a Reply (doc. no. 206), and an Amended Reply with leave of the Court. See doc. no. 212. The matter is now ripe for adjudication.

    **I.**    **BACKGROUND**

On August 23, 2013, Defendant Edmonds was found guilty by a jury of both counts of a two-count indictment. Defendant was found guilty of one count of conspiracy to possess with intent to distribute 500 grams or more of a mixture and substance containing cocaine in violation of 21 U.S.C. § 846. Defendant was also found guilty of one count of unlawfully attempting to possess with intent to distribute 500 grams or more of a mixture and substance containing cocaine in violation of title 21 U.S.C. § 846.

On January 16, 2014, the Court, following the preparation of Defendant's presentencing report, after receiving and considering submissions from counsel for Defendant and Government, and after holding a sentencing hearing with Defendant present, the Court sentenced Defendant to

a 130-month term of imprisonment at each count, to be served concurrently, followed by an 8-year term of supervised release at each of Counts 1 and 2 to be served concurrently.

Following the sentencing hearing, Defendant filed an appeal with the United States Court of Appeals for the Third Circuit. Doc. no. 149. On October 5, 2015, the Court of Appeals affirmed the Judgment of this Court. Doc. no. 184.

On November 12, 2015, upon Motion of Defendant Edmonds, this Court reduced Defendant's term of imprisonment from 130 months to 120 months based on a guideline sentencing range that was lowered after Defendant's sentencing date, but was made retroactive by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(u). This Court made this 10-month reduction to Defendant's term of imprisonment only after careful consideration of Defendant's Motion, the policy statement set forth at U.S.S.G. § 1B 1.10, and the sentencing factors set forth in 18 U.S.C. § 3553(a). All of the other terms of Defendant's January 16, 2014 Judgment, remained in effect and applicable. See doc. no. 188.

On June 21, 2016, Defendant filed a Motion to Vacate Sentence under 28 U.S.C. § 2255. Doc. no. 192. Counsel was appointed to represent Defendant in this endeavor on July 12, 2016 (doc. no. 192), and on July 15, 2016, this Court granted counsel for Defendant leave to file an Amended Motion to Vacate Sentence under 28 U.S.C. § 2255. Doc. no. 196. The Amended Motion to Vacate is due on October 14, 2016. Id.

On August 18, 2015, counsel for Defendant filed the instant Motion for Leave to Conduct Discovery [in support of the anticipated Amended Motion to Vacate]. Doc. no. 202. The Government filed a Response (doc. no. 205) and Defendant has filed a Reply. Doc. no. 206. The matter has been fully briefed by the parties.

## II. STANDARD OF REVIEW

The prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial. *United States v. Bagley*, 473 U.S. 667, 675–76 (1985).

While there is no case law precisely on point within the Third Circuit governing when it is appropriate to grant a motion for discovery in support of an anticipated motion to vacate, this Court finds case law emanating from the United States Court of Appeals for the Fifth Circuit instructive and in line with the above cited Supreme Court decision:

> A habeas petitioner may "invoke the process of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997) (citing *Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996)). "A federal habeas court must allow discovery and an evidentiary hearing only where a factual dispute, if resolved in the petitioner's favor, would entitle him to relief . . . ." *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994). Conclusional allegations are insufficient to warrant discovery; the petitioner must set forth specific allegations of fact. *Id.* (citing *Willie v. Maggio*, 737 F.2d 1372 (5th Cir. 1984)).

*United States v. Webster*, 392 F.3d 787, 801–02 (5th Cir. 2004); *see also, Adionser v. U.S.,* 2006 WL 2709694, *7 (E.D. Va. September 21, 2006) ("A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Leave of court is required to invoke discovery in a § 2255 proceeding, and may be granted only for "good cause." Rules Governing § 2255 Cases, Rule 6(a). Petitioner bears the burden of demonstrating good cause and must allege some material fact to trigger the court's discretion to grant leave for discovery. See *Bracy*, 520 U.S. at 908-09. Discovery is not required if the habeas petition plainly warrants dismissal. *Mayle v. Felix*, 545 U.S. 644, 125 S.Ct. 2562, 2581 (2005) (citing Habeas Corpus Rule 6(a), Rule 8(c), and Rule 4)).

Accordingly, this Court finds that if Defendant can show "good cause," this Court may in its discretion allow Defendant to proceed with discovery. In deciding whether Defendant has met his burden of proving such "good cause," Defendant must allege some material fact to trigger this Court's discretion to grant leave for discovery and this Court must consider whether a factual dispute, if resolved in the Defendant's favor, entitles him to the relief requested. The Court should disregard "conclusional allegations" and only consider Defendant's specific allegations of fact. It is on this standard that the Court now considers the following facts.

### III. DISCUSSION

#### A. Factual Background

Turning to the instant matter, this Court begins by considering the following facts which were presented during the jury trial and reiterated by the Court during the sentencing hearing:

Prior to July 31, 2012, Defendant met Dante Rodriguez-Sotelo, who was incarcerated in the same federal prison as Defendant. While Defendant and Sotelo were in prison together, Sotelo told Defendant about a man named Fidel Sanchez, and Sanchez's ability to obtain and sell illegal drugs. Upon Defendant's release from prison, while Sotelo remained in prison, Defendant contacted Sanchez on his own. Unbeknownst to Defendant, Sanchez was a confidential source for the Drug Enforcement Agency ("DEA"). Sanchez and Defendant had spoken on more one occasion, and the two agreed that the Sanchez would sell Defendant three kilograms of cocaine for $91,500.00, on July 31, 2012.

On the day in question, July 31, 2012, a DEA agent posing as the Sanchez's primary driver, received a telephone call from Defendant who indicated that he was 15 minutes away and would be bringing money to purchase the three kilograms of cocaine Sanchez promised. The DEA agent waited inside a Panera restaurant for Defendant's arrival.

When Defendant arrived at the Panera restaurant, he met and talked with the undercover DEA agent. The DEA agent called Sanchez on the telephone and handed the telephone to Defendant so Defendant could speak to Sanchez about the drug deal. After talking to Sanchez on the telephone, Defendant led the DEA agent to a vehicle, the agent got in the vehicle, and looked for the money. Defendant walked away to a different vehicle.

Upon Defendant's return to the vehicle where the DEA agent was seated, Defendant told the DEA agent that "his associate" was not comfortable. Ultimately, Defendant led the DEA agent out of the vehicle in which he was seated and introduced him to two other individuals – one of whom was Co-Defendant, William Johnson.

Johnson allowed Defendant to open the trunk of the second vehicle which had several bundles of U.S. currency in it. When the DEA agent asked if there was sufficient money for "three," Johnson told the agent that there was about $30,000.00 in that vehicle and that was sufficient money for "some" but he also said that somebody else wanted some of the drugs and was bringing more money.

The DEA agent walked away from the vehicle and told Defendant and Johnson there was insufficient money, but agreed to wait for a period of time to see if someone else would bring the remainder of the money. While the DEA agent waited in a nearby store, Defendant called him several times on the telephone asking that he not leave before the deal was finished.

About an hour later, Defendant called the DEA agent and told the agent that the rest of the money had arrived. Other DEA agents conducting surveillance conducted the arrests of Defendant Edmonds, Co-Defendant Johnson, and the other individuals who arrived with the additional money. The total amount of currency confiscated that day from Defendant Edmonds and Co-Defendant Johnson was $61,695.00.

Throughout the criminal trial of this matter, Defendant testified, and his counsel argued, that Edmonds thought he was purchasing marijuana – not cocaine – from Sanchez. The prosecution called an expert witness who testified that bulk quantities of cocaine are packaged as "kilos," which typically sell for $35,000 to $36,000 per kilo in western Pennsylvania. The expert also stated that bulk quantities of marijuana are sold in pounds, and three pounds of marijuana would never sell for over $60,000 in western Pennsylvania. In addition, the expert witness testified that the code word "girls" – which was used by Defendant Edmonds and Sanchez during their telephonic negotiations (and recorded and played back for the jury) – refers exclusively to cocaine.

As noted above, a jury found Defendant Edmonds guilty of conspiracy to possess with intent to distribute 500 grams or more of a mixture and substance containing cocaine and further found him guilty of unlawfully attempting to possess with intent to distribute 500 grams or more of a mixture and substance containing cocaine.

Prior to the sentencing hearing, but after the release of the presentence report, counsel for Defendant objected to the portions of paragraphs 6, 9, 11, 12, 13, 53, 54, 56, 57, 58, 59, 60, and 61 of the presentence investigation report, as well as the offense level computation paragraphs (paragraphs 17 through 27), all of which indicated that Defendant was aware that the drug deal at issue was a cocaine purchase. Defendant raised these objections to preserve his trial defense wherein he asserted that he thought he was purchasing marijuana, not cocaine, from Sanchez.

As noted by the Court during the sentencing hearing, the jury's verdict specifically found Defendant guilty of conspiracy to possess, as well as unlawfully attempting to possess with intent to distribute, 500 grams or more of cocaine on July 31, 2012. Given the jury's verdict in

this case, all of Defendant's aforementioned objections relating to "cocaine" were overruled by the Court during the sentencing hearing.

### B. Contentions of Defendant Edmonds

Defendant now contends that the Government withheld evidence from him during the trial of this matter which would have entitled him to relief – or at a minimum, a better "I-thought-I-was-buying-marijuana, not-cocaine" defense – before the jury. Defendant wants discovery on these evidentiary matters prior to filing his Amended Motion to Vacate Sentence under 28 U.S.C. § 2255. Specifically, Defendant argues that:

(1) The full name of last name of Dante Rodriguez-Sotelo was unknown to him; Defendant only knew Dante Rodriguez-Sotelo, as "Dante Sotelo," and thus, Defendant was allegedly unable to locate Sotelo who could have been brought to court to testify on Defendant's behalf during the trial (see doc. no. 202, ¶ 7); and

(2) The Rule 35(b) Motion that was filed by the Government on Sotelo's behalf in the United States District Court for the Northern District Georgia was not made known or available to Defendant (see doc. no. 202, ¶ 8). (Defendant notes that on October 13, 2013, a Judge in the Northern District of Georgia granted the Government's Rule 35(b) motion for Sotelo reducing his term of imprisonment from 220 months to 168 months. See doc. no. 202, ¶ 10.)

Defendant contends that evidence of Sotelo's sentence reduction would have helped him impeach Sanchez's testimony suggesting that Defendant Edmonds knew he was buying cocaine, not marijuana. Defendant's theory is as follows: If Defendant had possessed the 35(b) Sotelo evidence, and <u>if</u> that evidence would have been sufficient to impeach Sanchez's testimony, the jury may have believed Defendant when he explained that he thought he was buying marijuana,

not cocaine, and thus, the jury could have found Defendant not guilty of buying 500 grams or more of cocaine.

Defendant further points out that the United States Court of Appeals for the Third Circuit noted that its Opinion affirming the Judgment of this Court that it did "not condone the Government's failure to disclose the information about the cooperation benefit Sotelo received [in the instant matter]." *USA v. William Johnson,* no. 14-1202, p. 9, n. 9 (3d Cir. October 5, 2015) (non-precedential). Defendant suggests that this indicative of the Court of Appeals' desire to see this 35(b) Sotelo evidence come to light.

### C. Government's Response

In response to this Motion, the Government argues that all of Defendant's arguments are substantively meritless. However, in an attempt to accommodate the discovery request the Government attached an email exchange from the Assistant United States Attorney Craig Haller who prosecuted Defendant in the instant matter and the Assistant United States Attorney Scott Hulsey in the Northern District of Georgia concerning the Sotelo's Rule 35 hearing. See doc. no. 204-1.

### D. Analysis

Defendant's instant discovery Motion stems in part from the Court's decision during the trial to allow the jury to hear the testimony of Agent Gade, who debriefed Sanchez following Defendant's arrest. During the trial of this matter, counsel for Defendant was able to elicit testimony indicating that Sanchez had assisted the DEA in nearly one hundred cases and that he partially made his living as a confidential source. There was also testimony proffered which suggested that sometimes Sanchez would receive compensation in the form of cooperation benefits for third parties, and that he and Sotelo were at a minimum acquaintances, and at most,

8

friends. Also during trial, Sanchez specifically denied knowing whether Sotelo received any cooperation benefit for his assistance in connecting Edmonds with Sanchez.

Defendant's theory is that because Sotelo and Sanchez were friends, Sanchez wanted to help Sotelo obtain a reduced sentence. Defendant argues that the DEA would only have been interested in pursuing the case against Defendant Edmonds, if Defendant thought he was purchasing cocaine, not marijuana. Under Defendant's theory, if the Government had not wrongfully suppressed the Sotelo Rule 35 evidence during this trial, Defendant Edmonds would have been able to show the jury that Sotelo would receive a Rule 35 sentence reduction benefit if Sanchez could convince the jury that Edmonds was interested in buying cocaine, not marijuana. In short, Defendant argues that Sanchez was motivated to lie to the DEA about the drug that that Edmonds wanted to purchase (cocaine, not marijuana), so that the DEA would set up a sting operation to arrest Edmonds so that Sotelo, would get a sentence reduction under Rule 35.

Defendant Edmonds, during his appeal of the judgment in this case, raised two arguments before the Court of Appeals concerning the Sotelo Rule 35 evidence. First, Defendant argued that the prosecutor engaged in misconduct warranting a new trial when the prosecutor allegedly suppressed the fact that Sotelo was likely to receive a cooperation benefit. The Court of Appeals for the Third Circuit disagreed, finding that the mere existence of a Rule 35 Motion in favor of Sotelo would not have contradicted Sanchez's trial testimony wherein Sanchez declared that he did not know if Sotelo received a cooperation benefit for his assistance in this case. Next, Defendant argued that this Court improperly allowed Agent Gade to testify regarding Sanchez's debriefing – when (presumably) Sanchez told Agent Gade that Defendant Edmonds was attempting to buy cocaine, not marijuana – because these statements were "not clearly prior to Sanchez's motive to lie." During trial, Defense counsel objected to these debriefing statements

9

but focused on the consistency of the statements as opposed to the timing of those statements. The Court of Appeals noted that Edmonds' "defense counsel passed up its opportunity to argue the timing, or at least . . . that they considered [the timing] an element of the objection worth exploring."

Defendant's immediate discovery motion before this Court implies that Defendant is hoping to obtain discovery surrounding the Sotelo Rule 35 Motion in order to bolster his (presumed) ineffective assistance of counsel argument in his upcoming Amended Motion to Vacate under 28 U.S.C.A. § 2255. See doc no. 202, p. 9.

As set forth above, the standard of review suggests that if Defendant can show "good cause," this Court may, in its discretion, allow Defendant to proceed with discovery. In deciding whether Defendant has exhibited such "good cause," this Court should consider whether has alleged material facts which would trigger this Court's discretion to grant leave for discovery, and this Court must consider whether a factual dispute, if resolved in the Defendant's favor, entitles him to the relief requested. The Court should disregard "conclusional allegations" and only consider Defendant's specific allegations of fact.

First, the Court notes that there are many conclusional allegations present here which weigh against allowing any discovery. However, as also discussed, this Court is cognizant of the Court of Appeals' Opinion which noted that Defendant's counsel failed to raise "timing" as part of their hearsay objection to the Sanchez debriefing testimony. *Johnson*, at p. 10, n. 10. These appellate comments weigh in favor of a "good cause" finding. Notwithstanding these comments, even if a material factual dispute is resolved in Defendant Edmonds' favor, the Court will then have to determine whether the favorable factual resolution entitles him to the relief requested

considering the anticipated argument(s) to be predicated upon these facts in his Amended Motion to Vacate.

Therefore, given that this matter appears to be one where the Court could rule either way at this juncture, the Court will order the Government to produce the following for an *in camera* inspection to assist the Court in resolving this matter:

(1) All records of oral and written communication between the United States Attorney's Office for the Western District of Pennsylvania and the United States Attorney's Office for the Northern District of Georgia from July, 2012, through October, 2013, regarding the assistance provided by Dante Rodrigue[z]-Sotelo against Jermaine Edmonds;

(2) All records of oral and written communication between the United States Attorney's Office for the Western District of Pennsylvania and the DEA from July, 2012, through October, 2013, regarding the assistance provided by Dante Rodriguez-Sotelo against Jermaine Edmonds; and

(3) All records of email and telephonic communication between Dante Rodrigue[z]-Sotelo and Fidel Sanchez from July, 2012 through October, 2013.

**ORDER**

The above-enumerated categories of documents, to the extent they exist, are to be produced to the Court for its *in camera* inspection on or before September 13, 2016. The Court will render its final decision on Defendant Edmonds' Motion for Discovery shortly thereafter.

**SO ORDERED**, this 1st day of September, 2016.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc: All Registered ECF Counsel and Parties