IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,

        Plaintiff,                               Criminal No. 12-0232

        v.                                 ELECTRONICALLY FILED

JERMAINE EDMONDS,

        Defendant.

## MEMORANDUM ORDER

Before the Court is an Amended Motion to Vacate, Set Aside, or Correct a Sentence

pursuant to 28 U.S.C. § 2255 ("Amended Section 2255 Motion") and Brief in Support filed by

Jermaine Edmonds ("Petitioner") (doc. nos. 217 and 220), one of two individuals who was

convicted by a jury on a two-count indictment.[1]  In this criminal action, the jury found Petitioner

guilty of conspiracy to possess with intent to distribute 500 grams or more of cocaine, and

attempting to possess with intent to distribute 500 grams or more of cocaine.  This Court

sentenced Petitioner to a 120-month term of imprisonment[2] at each of Counts 1 and 2 to be

served concurrently, followed by an 8-year term of supervised release at each of Counts 1 and 2

to be served concurrently.

The sole basis for Petitioner's Amended Section 2255 Motion, which seeks a reversal of

his conviction and sentence, is that he was denied a fair trial, because the Government allegedly

---

[1] Petitioner's original  Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255 was filed *pro se*  by Petitioner (see doc. no. 192), but shortly thereafter, counsel was appointed and Petitioner's counsel requested leave to file the instant Amended Section 2255 Motion.  See doc. nos. 193, 195, and 196.

[2]  This Court reduced Petitioner's term of imprisonment from 130 months to 120 months upon Petitioner's Motion, based upon a guideline sentencing range that was lowered after Defendant's sentencing date, but was made retroactive by the United States Sentencing Commission, pursuant to 28 U.S.C. § 994(u).  See doc. nos. 186 and 187.

concealed evidence which would have allowed the jury to believe Petitioner's trial theory. Petitioner had argued throughout the trial that he thought he was buying marijuana, not cocaine, from an undercover agent. The Government has filed a Response to the Amended Section 2255 Motion and Brief in Support (see doc. no. 224) making this matter ripe for adjudication.

## I. Standard of Review

### A. Evidentiary Hearing

When a Petitioner brings a motion to vacate sentence pursuant to Section 2255, the District Court has discretion whether to conduct an evidentiary hearing. *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008) (citing *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005)). However, the District Court is required to hold an evidentiary hearing on a motion to vacate sentence unless the motion and files and records of the case show conclusively that the movant is not entitled to relief. *Id.* (citing *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). This is not a high bar for a movant to meet, especially since the Court, in considering a Section 2255 claim, "'must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" *Id.* (quoting *Forte*, 865 F.2d at 62); see also Rules Governing § 2255 Proceedings, Rules 4 and 8.

Thus, a Section 2255 Motion "'can be dismissed without a hearing [only] if: (1) the [movant's] allegations, accepted as true, would not entitle the [movant] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). A district court's decision not to hold an evidentiary hearing may be reversed for abuse of discretion if "the files and records of the case are inconclusive on the issue of whether [the]

movant is entitled to relief." *Id.* at 131 (citing *Solis v. United States*, 252 F.3d 289, 294-95 (3d Cir. 2001)).

## B.     Section 2255

Section 2255 of Title 28 of the United States Code provides that:

> (a) A prisoner in custody under sentence of a court established by Act of Congress  claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Further, and as noted above, Section 2255 provides that the Court shall grant a prompt hearing unless Petitioner's Motion to Vacate, the files, and the records in this case "conclusively show that the prisoner is entitled to no relief[.]" *See* 28 U.S.C.  § 2255(b).

Notwithstanding the above, it is important to note *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (*quoting Davis v. United States*, 417 U.S. 333, 346, (1974) (*quoting Hill v. United States*, 368 U.S. 424, 428, (1962)).

## C.     Ineffective Assistance of Counsel

The standard of review for ineffective assistance of counsel is a familiar one.  It occurs when an attorney's performance falls below "an objective standard of reasonableness," and there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Luparella v. U.S.*, 335 Fed. Appx. 212, 214 (3d Cir. 2009) citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate "(1) that his counsel's performance was deficient; and (2) that he was prejudiced by it." *Brennan*

*v. U.S.*, 322 Fed.Appx. 246, 246-247 (3d Cir. 2009) citing, *Lilly*, 536 F.3d at 195 and *Strickland*, 466 U.S. at 687.

In order to meet the first part of the two-part *Strickland* test, an attorney's performance may be deemed deficient when "'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *U.S. v. Hankerson*, 496 F.3d 303, 301 (3d Cir. 2007), citing *Strickland* at 687. "In assessing counsel's performance, the reviewing court must be 'highly deferential,' and 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Ibid*.

The United States Court of Appeals for the Third Circuit in *Hankerson* further explained that in order to meet the second part of the two-part *Strickland* test:

> . . . If a defendant succeeds in satisfying the first component, he must then also show prejudice, that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In the sentencing context, prejudice exists where the deficient performance affected a defendant's sentence. See, e.g., *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) (holding that any increase in sentence resulting from deficient performance can constitute prejudice).

*Hankerson*, 496 F.3d at 310-11.

This Court has considered Petitioner's § 2255 Motion according to these standards.

II.     **Procedural and Factual Background**

   A.  **Procedural History**

On July 31, 2012, a special agent from the DEA filed a criminal complaint accusing Petitioner and his co-conspirator, Johnson, of conspiracy and attempt to possess with intent to distribute 500 grams or more of cocaine.  On August 28, 2012, the grand jury charged Petitioner and Johnson with one count of conspiracy to possess with intent to distribute 500 grams or more of cocaine, and one count of attempting to possess with intent to distribute 500 grams or more of cocaine.  Petitioner and Johnson were arraigned on these charges on September 4, 2012, both pled not guilty, and both were incarcerated until trial.

Petitioner was well represented throughout these proceedings, including the jury trial, by two experienced criminal defense attorneys whom Petitioner personally retained.  Jury selection and the trial on these two charges began on August 21, 2013.  On August 23, 2013, the jury returned a verdict of guilty on both counts as to each defendant.

This Court held a sentencing hearing for Petitioner on January 16, 2014, and sentenced Petitioner to a 130-month term of imprisonment at each of Counts 1 and 2 to be served concurrently, followed by an 8-year term of supervised release at each of Counts 1 and 2 to be served concurrently.

Petitioner timely filed his Notice of Appeal with the United States Court of Appeals for the Third Circuit on January 17, 2014. See doc. nos. 149 and 155 assigning USCA case number 14-1184.   The Court of Appeals affirmed the Judgment of this Court on October 5, 2015.  See doc. no. 184.

Subsequently, Petitioner obtained counsel who filed a Motion to Reduce his Sentence pursuant to the United States Sentencing Commission amendment of Section 2D1.1 of the

United States Sentencing Guidelines. This Court granted that Motion, and reduced Petitioner's

term of imprisonment from 130 months to 120 months pursuant to 28 U.S.C. § 994(u). See doc.

nos. 186 and 187.

Presently before this Court is Petitioner's Amended Section 2255 Motion and Brief in

Support, timely filed on October 5 and 6, 2016, wherein Petitioner asks this Court to vacate his

conviction and sentence. See doc. nos. 217 and 220. The Brief in Support of the Amended

Section 2255 Motion raises four arguments in support of overturning Petitioner's conviction and

sentence. The Government filed a Response to the Amended Motion and Brief in Support. See

doc. no. 224.

**B. Factual Summary**

Prior to the offenses which led to Petitioner's conviction in this case, Petitioner was

previously incarcerated with a man by the name of Dante Rodriguez-Sotelo. During their time

together, Sotelo recommended Fidel Sanchez to Petitioner as a person to contact for drugs when

Petitioner was released from prison. Sanchez was a paid Drug Enforcement Agency informant.

After being released from prison, Petitioner acted upon Sotelo's recommendation and contacted

Sanchez.

Trial testimony, which included recorded telephone conversations which were played for

the jury, indicated that prior to July 31, 2012, Petitioner had spoken on more one occasion with a

Sanchez, and the two had agreed that Sanchez would sell drugs to Petitioner for $91,500.00.

Sanchez agreed to meet Petitioner in Pittsburgh, Pennsylvania to consummate this deal.

On July 31, 2012, Petitioner set out for a Panera Bread restaurant to meet with Sanchez's

driver to complete the drug deal that he and Sanchez negotiated by telephone. A Drug

Enforcement agent ("DEA agent") who waited inside that Panera restaurant, was posing as

Sanchez's driver. While waiting in the restaurant, the undercover DEA agent received a telephone call from Petitioner who indicated that he was fifteen minutes away and would be bringing money to purchase Sanchez's drugs. The DEA agent continued to wait inside the Panera restaurant for Petitioner's arrival.

When Petitioner arrived at the Panera restaurant, he met and talked with the undercover DEA agent. The DEA agent called Sanchez on the telephone and handed the telephone to Petitioner so Petitioner could speak to Sanchez about the drug deal. Petitioner led the DEA agent to a vehicle, a Ford Explorer, and the agent got in the vehicle and looked for the money. Petitioner left the Explorer and walked to a different vehicle, a Dodge Charger.

Upon Petitioner's return to the Explorer where the DEA agent was seated, Petitioner told the agent that "his bro" (the co-Defendant in this case, William Johnson) was not comfortable. The DEA agent offered to end the deal stating he was instructed by Sanchez not to perform the deal without first seeing Petitioner's money. Petitioner responded by stating that he wanted to go talk with his associate, and he left the DEA agent again. Two minutes later Petitioner returned and led the DEA agent out of the Explorer and introduced the agent to Johnson and another individual.

Johnson instructed the other person present to open the trunk of the Dodge Charger, and upon doing so, the DEA agent observed several bundles of currency. When the DEA agent asked if there were "big bills" among the bundles of currency, Johnson told the agent he was free to inspect them. When the DEA agent asked if there was sufficient money in the trunk for "three," Johnson responded that there was close to thirty thousand dollars in the trunk and that was sufficient money for "some;" but, Johnson also informed the agent that "somebody else" wanted some of the drugs and was bringing more money.

7

The DEA agent, knowing that Petitioner and Sanchez had agreed upon $91,500.00 as payment for the drugs, walked away from the vehicle telling Petitioner and Johnson there was not sufficient money. Johnson told the DEA agent that there was more money available and that he could have the rest of the money delivered shortly. Johnson also told the agent that he would be selling the drugs for a profit, stating that he would be "charging 45 [thousand dollars]," as opposed to the thirty it was costing him personally. The agent agreed to wait for a period of time to see if the remainder of the money would arrive. While the agent waited in a nearby store, Petitioner called him several times to ask that he not leave before the deal was finished.

Over one hour later, Petitioner called the agent saying additional money had arrived and other agents conducting surveillance conducted the arrests of Edmonds, Johnson, and other individuals who arrived with the additional money. The total amount of currency confiscated that day was $61,695.00.

## III. Analysis of Petitioner's Claims[3]

Petitioner's Brief in Support advances four arguments challenging his conviction and sentence. All of his arguments are based on the premise that the Government actively concealed information about Dante Sotelo, an inmate who was housed in a federal prison with Petitioner prior to Petitioner's commission of these offenses.

Although Sotelo did not testify at Petitioner's trial, Sotelo received a 52-month sentence reduction for his assistance in the instant case brought by the Government against Petitioner. Sotelo received a large portion of his 52-month sentence reduction based upon a Federal Rule of

---

[3] Based on the facts of this case as discussed more thoroughly herein, this Court finds it is not required to hold an evidentiary hearing, because this Amended Section 2255 Motion along with the records of this case conclusively show that Petitioner is not entitled to relief.

Criminal Procedure 35(b) Motion ("Sotelo's Rule 35(b) Motion") filed by a federal prosecutor in

the Northern District of Georgia – the district where Sotelo had been convicted of his crime(s) –

in May of 2013.[4]  Sotelo's Rule 35(b) Motion was filed by the federal prosecutor, because Sotelo

had connected Petitioner to Fidel Sanchez, a paid informant for the DEA.[5]  Upon Petitioner's

release from federal prison where he was housed with Sotelo, Petitioner used Sotelo's referral

and contacted Sanchez.

All of Petitioner's claims in this Amended Section 2255 Motion turn on the fact that if he

had been able to present the jury with the allegedly concealed evidence that Sotelo had filed a

Rule 35(b) Motion to have his sentenced reduced – again, at time of trial in this matter, no

hearing had yet been held and Sotelo had not yet received his sentence reduction – Petitioner

would have likely convinced the jury that he was in essence "framed" by Sotelo, and Sotelo's

close friend, Sanchez.  Petitioner claims that the Rule 35(b) Motion would have enabled him to

argue to the jury that Sotelo and Sanchez conspired to dupe Petitioner into thinking he would be

buying marijuana, not cocaine, from Sanchez.

To reach Petitioner's conclusion – that Sotelo's Rule 35(b) Motion could have assisted

him in convincing a jury that he thought he was buying marijuana, not cocaine – requires several

additional assumptions on the jury's part:

- First, the jury would have had to assume that the prosecutor in Sotelo's case

    would not have filed a Rule 35(b) Motion if the drug deal between Sanchez and

---

[4] Although the Rule 35(b) Motion was filed in May 2103 in the Northern District of Georgia, well before the start date of the trial in this case (August 21, 2103), a hearing on the Rule 35(b) Motion was not conducted until October of 2013, after Petitioner and his co-defendant were convicted in this case.

[5] As Sanchez explained during the trial in the instant matter, his work for the DEA was his primary source of income and he had earned $8,000.00 for his assistance in the investigation of Petitioner.  Sanchez further explained that payment was not conditioned upon the outcome of Petitioner's trial.  Sanchez also testified that he had worked for the DEA as an informant for over 20 years and had earned upward of $300,000.00 for his work.

Petitioner was for three pounds of marijuana; rather, the only way for Sotelo to get a sentence reduction was if the DEA and the federal prosecutor believed the Sanchez-Petitioner drug deal concerned cocaine.

- Second, the jury would have had to assume that Sanchez and Sotelo were so close that Sanchez was willing to risk his career with the DEA to help shave an unknown number of months off Sotelo's sentence, despite Sanchez's trial testimony to the complete contrary.

- Third, the jury would have to completely disregard nearly all of the objective evidence present in this case – such as the baking soda (which is used to cut cocaine, not marijuana), three large Ziplock baggies (which could never have contained three pounds of marijuana, but could hold three kilos of cocaine), and a box cutter (which is commonly used to cut open the wrapping on kilos of cocaine – found on Petitioner or in the rental car Petitioner and his co-defendant used on the day they attempted to consummate this drug deal.

- Finally, the jury, which heard uncontroverted testimony that the drug deal was $91,500.00 in exchange for "three girls," would have had to completely disregard the testimony of the Government's expert witness who explained that: (1) cocaine, when packaged in bulk as "kilos," typically sells for $35,000 to $36,000 per kilo in western Pennsylvania, and (2) bulk quantities of marijuana, sold in pounds, sell for far less – in fact, three pounds of marijuana would never sell for over $60,000.00 in western Pennsylvania. In addition, the expert witness explained that the code word "girls" – which was used by Petitioner and Sanchez

10

during their telephonic negotiations (which were recorded and played back for the jury) – refers exclusively to cocaine.

In sum, Petitioner claims that the Government's attorney in this case concealed the fact that a Rule 35(b) Motion had been filed on Sotelo's behalf, because if the jury learned of the existence of this Rule 35(b) Motion, it would have been likely to draw all of the above assumptions and conclude that Defendant was being truthful when he claimed that he thought he was buying marijuana – not cocaine – from Sanchez.

### A. Petitioner's Factual Basis for his Claim of Government Concealment Fails

During the trial, Sanchez stated that he and Petitioner attempted to negotiate a deal for the sale of cocaine. Petitioner testified at the jury trial that Sanchez was lying and that the two men were negotiating for the sale of marijuana. Petitioner claims that during the trial, the Government was able to convince the jury that Sanchez – the confidential informant – had no reason to lie about what type of drug Petitioner was attempting to buy on July 31, 2012. The following exchanges occurred during the trial when Sanchez was cross-examined by Petitioner's trial counsel:

> Q. And to your knowledge, was your friend given any type of benefits
> because of connecting you with Mr. Edmonds?
> A. No, sir.
> Q. Did you ask about that?
> A. No.
> Q. And it was never brought up to your attention?
> A. Not that I remember.
>                          *       *       *
> Q. And in terms of your friend [Sotelo], in terms of [Sotelo], would you
> say that you were motivated in part to get [Petitioner] because of
> [Sotelo's] predicament?
> A. No.
> Q. No? Your friendship didn't matter to you?
> A. I'm doing this on different occasions, and I don't necessarily use
> [Sotelo] to do my deals, to do my DEA work.

August 21, 2013 trial transcript, p. 29 and p. 44. Based on Sanchez's testimony, on August 21,

2013, Sanchez testified that Sotelo had not been given "any type of benefits" because Sotelo had

connected Sanchez with Petitioner.

Similarly, DEA Agent Louis Gade testified as follows:

> Q. Have you ever worked with Mr. Sanchez in the past?
> A. Yes, sir. I've been his controlling agent for
> approximately the last eight or nine years.
> Q. Eight or nine years?
> A. Yes, sir.
> Q. And does he primarily bring you cocaine cases?
> A. Primarily, no.
> Q. What other types of cases does he bring you?
> A. To the best of my recollection, we've done numerous cocaine cases.
> We've done numerous heroin cases. We have done a handful of crystal
> methamphetamine cases.
> Q. But no marijuana? Marijuana is not his -- as interesting as the cocaine
> and the heroin cases? Is that fair to say?
> A. I'm a DEA agent. So all the drugs to me, they're all illegal. So we
> would work any case that he would bring involving drugs.

> *     *     *

> Q. And you are familiar with Mr. Sotelo?
> A. I'm familiar with the name.
> Q. How do you remember that name? Why are you familiar
> with it?
> A. I know he's currently incarcerated in a Federal
> Penitentiary. And I know he is friends with Mr. Sanchez.
> Q. Did you have any discussions with Mr. Sanchez
> regarding Mr. Sotelo?
> A. Yes. I did.
> Q. Tell us about those conversations.
> A. The conversations were very brief. Basically
> Mr. Sanchez told me about Mr. Edmonds. That information originated
> from Dante Sotelo while he was in jail.
> Q. And to your knowledge was Mr. Sotelo given any type of preferential
> treatment based on the information he provided Mr. Sanchez?
> A. I'm not sure if he's received any benefit or not at this point.

August 21, 2013 trial transcript, p. 71-72 and 74. In sum, DEA Agent Gade testified that he and

Sanchez would work different types of drug cases together – not just cocaine cases – and that he

did not know if Sotelo had been given "any type of preferential treatment" for connecting

Sanchez with Petitioner.

The Court takes judicial notice of two documents filed in the United States District Court

for the Northern District of Georgia, Atlanta Division, at criminal number 1:03-CR-493,

specifically: (1) doc. no. 2483, the Rule 35(b) Motion filed on May 15, 2013 by the federal

prosecutor in the Sotelo matter asking the Court to reduce Sotelo's sentence by 22 months; and

(2) doc. no. 2495, Sotelo's Response to the Government's Motion filed on August 8, 2013 asking

the Court for a sentence reduction of 42 months.  The dates of these filings clearly and

irrefutably support Sanchez's testimony and Agent Gade's testimony that, as of the date of their

testimony, no benefit in the form of a sentence reduction had been given to Sotelo.  Competing

requests had been made, but no benefit had yet been conferred.[6]

Given the fact that the testimony given by Sanchez and Agent Gade during the trial is

entirely consistent with the fact that Sotelo had not (yet) received any benefit, and given that the

Rule 35(b) Motion requesting a 22-month reduction and Sotelo's Response asking for a 42-

month reduction were publicly available, falls far short of proving the Government actively

concealed any information from Petitioner. Moreover, the Court, upon review of the transcript

from the October 10, 2013 Rule 35(b) Hearing, finds the following exchange between the

prosecutor and the Northern District of Georgia Court relevant:

> [PROSECUTOR]:  . . . After talking to [Sotelo's attorney] I had an
> opportunity to talk first of all to the investigating agent in Chicago [Agent
> Gade] who was working with [Sotelo], and then also the prosecutor in
> Pennsylvania who was prosecuting the case. so it covered multiple
> jurisdictions, I guess, I learned a few additional facts that are not contained
> in our [Rule 35(b)] Motion . . .   First, I learned that the crime being
> prosecuted, it was a significant drug crime.  Both the Defendants were

---

[6] This Court would note that these documents are not filed under seal and were publicly available during
the trial of the instant matter.

actually convicted this year in August and are facing a minimum of 120
months in prison, if not longer. . . .

October 10, 2013 Hearing Transcript at p.3, case number 1:03-CR-493, Northern District of

Georgia, Atlanta Division.

The Court finds this portion of the Rule 35(b) Hearing Transcript relevant because it

shows that the prosecutor in Sotelo's case did not talk to the Government attorney prosecuting

Petitioner's case until sometime after May 15, 2013 (the date the Rule 35(b) Motion was filed).

Moreover, given the entire exchange and the federal prosecutor's use of past tense (. . . I learned

it was a significant drug crime . . . [b]oth the Defendants were actually convicted this year in

August . . .") leads this Court to conclude that the Government's counsel did not discuss Sotelo's

situation with Sotelo's prosecutor until after the trial of Petitioner was well concluded.

In short, there is absolutely no factual support for Petitioner's contention that the

Government actively concealed the fact that a Rule 35(b) Motion had been filed on Sotelo's

behalf.  Petitioner's trial counsel asked two witnesses if a benefit had been given to Sotelo, and

the evidence shows that the Government's attorney did not discuss Sotelo's situation with

Sotelo's prosecutor until after the trial of Petitioner had concluded.

Accordingly, there is no factual basis to support the premise for each of Petitioner's four

claims in his Amended Section 2255 Motion, and thus all four claims must be denied.

**B.  Petitioner Lacks a Legal Basis for his Claim of Government Concealment**

Not only does the Court find that there is no factual basis to support any of Petitioner's

four claims – all of which rest on a factual finding that the Government actively concealed

Sotelo's Rule 35(b) Motion, which this Court has denounced  – Petitioner's arguments attempt to

re-litigate an issue which the United States Court of Appeals for the Third Circuit already

decided.

Petitioner's overarching legal argument in support of his position is that the Government attorney was required to disclose the existence of the Rule 35(b) Motion in accordance with *Brady v. Maryland,* 373 U.S. 83 (1963).

This Court has already touched on the Court of Appeals' decision with respect to Sotelo's Rule 35(b) Motion. As noted by this Court in a prior Opinion:

> Defendant Edmonds, during his appeal of the judgment in this case, raised two arguments before the Court of Appeals concerning the Sotelo Rule 35 evidence. First, Defendant argued that the prosecutor engaged in misconduct warranting a new trial when the prosecutor allegedly suppressed the fact that Sotelo was likely to receive a cooperation benefit. The Court of Appeals for the Third Circuit disagreed, finding that the mere existence of a Rule 35 Motion in favor of Sotelo would not have contradicted Sanchez's trial testimony wherein Sanchez declared that he did not know if Sotelo received a cooperation benefit for his assistance in this case. Next, Defendant argued that this Court improperly allowed Agent Gade to testify regarding Sanchez's debriefing – when (presumably) Sanchez told Agent Gade that Defendant Edmonds was attempting to buy cocaine, not marijuana – because these statements were "not clearly prior to Sanchez's motive to lie." During trial, Defense counsel objected to these debriefing statements but focused on the consistency of the statements as opposed to the timing of those statements. The Court of Appeals noted that Edmonds' "defense counsel passed up its opportunity to argue the timing, or at least . . . that they considered [the timing] an element of the objection worth exploring."

Doc. no. 214, p. 10.

Upon re-review of the entire Opinion of the Court of Appeals, the Court finds that the Court of Appeals has already <u>fully</u> reviewed the alleged Rule 35(b) Motion concealment issue. The Court of Appeals' Opinion reads, "Johnson and [Petitioner] argue that prosecutors committed misconduct warranting a new trial when they failed to disclose that Dante Sotelo received a cooperation benefit." *United States v. Johnson,* 628 Fed. Appx. 124, 128 (3d Cir. 2015). The Court then dropped a footnote which reads, "Because they raise this issue for the

first time on appeal, our review is for plain error." *Id.,* at n. 7 (citation omitted). The remainder

of the Appeals' Court Opinion on this issue reads as follows:

> In *Brady v. Maryland*, the Supreme Court held "that the suppression by
> the prosecution of evidence favorable to the accused upon request violates
> due process where the evidence is material either to guilt or to
> punishment, irrespective of the good faith or bad faith of the prosecution."
> *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir.2004) (quoting *Brady v.
> Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). "[T]o
> establish a *Brady* violation requiring relief, a defendant must show that (1)
> the government withheld evidence, either willfully or inadvertently; (2)
> the evidence was favorable, either because it was exculpatory or of
> impeachment value; and (3) the withheld evidence was material." *Id.*
> Evidence is material "if there is a 'reasonable probability' that, had the
> evidence been disclosed to the defense, the result of the proceeding would
> have been different." *Kyles v. Whitley*, 514 U.S. 419, 433, 115 S.Ct. 1555,
> 131 L.Ed.2d 490 (1995). This "does not require a demonstration by a
> preponderance that disclosure . . . would have resulted ultimately in the
> defendant's acquittal." Id. at 434, 115 S.Ct. 1555. Rather, "the materiality
> standard for *Brady* claims is met when 'the favorable evidence could
> reasonably be taken to put the whole case in such a different light as to
> undermine confidence in the verdict.'" *Banks v. Dretke*, 540 U.S. 668,
> 698, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) (quoting *Kyles*, 514 U.S. at
> 435, 115 S.Ct. 1555).
>
> We have previously declined to consider a *Brady* claim not formally
> raised and litigated before the District Court. See *United States v. Green*,
> 556 F.3d 151, 154 n. 2 (3d Cir.2009). In this case, however, the record
> contains sufficient evidence for us to evaluate the claim. The allegedly
> withheld information about Sotelo's cooperation benefit was arguably not
> material in the *Brady* sense. Its ostensible purpose was to impeach
> Sanchez's motive for testifying that Edmonds agreed to purchase cocaine.
> At trial, defense counsel elicited testimony that Sanchez had assisted the
> DEA in approximately one hundred cases, App. 175, that he makes his
> living, in part, as a confidential source, App. 192, that his compensation
> sometimes takes the form of cooperation benefits for third parties, App.
> 222, and that he is friends with Sotelo, App. 178.8 Sanchez testified he
> had not asked the DEA about Sotelo receiving a cooperation benefit and
> was not aware of him receiving such a benefit. App. 178. Evidence of a
> Rule 35 motion filed on Sotelo's behalf would not directly have
> contradicted Sanchez's statement that he did not know about it. And even
> if the jury believed that Sanchez did know about the benefit for Sotelo, it
> would merely add this to the already-established tally of benefits Sanchez
> expected to receive for his cooperation. There was no question Sanchez
> expected to benefit from assisting the DEA. Whatever slight

impeachment value the Rule 35 motion might have had, in the context of the other benefits Sanchez received for his cooperation, we are not persuaded it would have "put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435, 115 S.Ct. 1555.9 Because the existence of a *Brady* violation in this case is subject to reasonable dispute, the alleged non-disclosure does not amount to plain error.

*Id*., at 128-9. The Court of Appeals further noted:

Nor would evidence of Sotelo's cooperation benefit impeach Sanchez's credibility generally. It would be too speculative to assume that jurors, informed that Sotelo received a benefit, would believe that Sanchez lied that he didn't know about the benefit—particularly when he had freely testified as to the benefits he personally received. That said, we do not condone the Government's failure to disclose the information about the cooperation benefit Sotelo received. Disclosure certainly would have been the better course.

Id., at 129, n.9.

Although the Court of Appeals reviewed Petitioner's Rule 35(b) Motion for plain error and, as noted above, this Court's standard of review for the instant Section 2255 Motion requires the Court to grant relief under Section 2255 only when "the claimed error of law [is] 'a fundamental defect which inherently results in a complete miscarriage of justice,' and . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ . . . is apparent.'" As this Court has carefully detailed in subpart "A." above, no miscarriage of justice is or was factually present here.

Thus, the Court of Appeals has already fully considered, thoughtfully reviewed, and summarily rejected Petitioner's claim that he did not receive a fair trial because the Government concealed Sotelo's Rule 35(b) Motion. The Court of Appeals conducted its review of this issue using a plain review standard. This Court, if it were proper to re-analyze the same issue under a different standard, applying a more stringent standard, would arrive at the same conclusion as the Court of Appeals and would find no miscarriage of justice present here.

**IV. Conclusion**

Petitioner is not entitled to have his conviction and sentence overturned based upon the issues raised in his Amended Section 2255 Motion. Accordingly, Petitioner's Section 2255 Motion must be denied. No certificate of appealability shall issue. An appropriate Order follows.

**ORDER**

AND NOW, this 22nd day of September, 2016, it is hereby ORDERED, ADJUDGED, and DECREED that Petitioner's Amended Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 217) is hereby **DENIED**. No certificate of appealability shall issue.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel