IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

       Plaintiff,

   v.

JERMAINE EDMONDS, WILLIAM JOHNSON,

       Defendants.

Criminal No. 12-0232
ELECTRONICALLY FILED

**MEMORANDUM ORDER DENYING MOTION FOR RELEASE**

Before the Court is Defendant's counseled Motion for Compassionate Release filed pursuant to 18 U.S.C.A. § 3582(c)(1)(A)(1) at ECF 234[1], and the Government's Response to same. For the reasons set forth herein, the Motion will be denied.

**I. BACKGROUND**

The factual background recited below is taken largely from Defendant's counseled Motion filed at ECF 234.

On August 28, 2012, Defendant and his co-defendant, William Johnson, were charged by with conspiracy to possess with the intent to distribute and possession with intent to distribute 500 grams or more of cocaine on or about July 31, 2012. ECF 17. At the time of the instant offense, Defendant was on supervised release as the result of a prior federal drug offense (Criminal No. 12-cr-00209) – which, as Defendant's counsel notes, was Defendant's only prior conviction that "generated criminal history points." ECF 234, at p. 2, n.2.

---

[1] The Court also considered Defendant's *pro se* Motion filed at ECF 229, which Defendant filed prior to being assigned an attorney to represent him in this matter. Defendant's *pro se* motion will likewise be denied for the same reasons set forth herein.

1

Nearly one year later, on August 23, 2013, Defendant and his co-defendant were found guilty after trial by jury. ECF 121. On January 16, 2014, this Court sentenced Defendant to 130 months imprisonment and an 8-year term of supervised release. ECF 148.[2]

On May 13, 2014, Defendant's term of supervised release at Criminal No. 12-cr-00209 was revoked and he was sentenced by the Honorable David S. Cercone to 15 months imprisonment to run consecutive to the 13-month term of incarceration imposed by this Court. See, Criminal No. 12-cr-00209, ECF 17.

Defendant has been in continuous custody since July 31, 2012, and is presently incarcerated at FCI-Danbury in Connecticut with a projected release date of August 24, 2022. The sentence he is currently serving reflects the combined 15-month supervised release violation at Criminal No. 12-cr-00209 imposed in 2014, as well as the (amended) 120-month term of imprisonment handed down by this Court in the instant matter in 2015. ECF 188.

Defendant now moves for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), stating that he "suffers from hypertension" and is part of a class of people who are susceptible to the COVID-19 virus, "especially so while incarcerated." ECF 234, p. 1. The Government's response acknowledges that hypertension is listed as a possible risk factor by the Centers for Disease Control ("CDC"), but argue against Defendant's early release suggesting that no extraordinary conditions or compelling reasons exist in this case to justify same. ECF 236, p. 2.

---

[2] Defendant's Judgment was amended, on November 12, 2015, to reduce his 130-month term of imprisonment to 120 months. ECF 188. This Amended Judgment was entered by this Court after Defendant's counsel filed a motion requesting said reduction predicated upon a lowering of the sentencing range by the Sentencing Commission in accordance with 28 U.S.C. § 994(o). ECF 186.

**II. DISCUSSION**

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A federal court generally may not modify a term of imprisonment once it has been imposed."). The First Step Act's amendment of 18 U.S.C. § 3582 provides an example of such specific authorization. As amended, the First Step Act allows this Court to modify a defendant's term of imprisonment <u>if</u> "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i). In addition, this Court must consider: (1) whether Defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable; and (3) whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. § 3582(c)(1)(A).

Under the facts presented here, the Court finds that Defendant's current health condition fails to rise to an "extraordinary and compelling" level. As such, compassionate release is inappropriate.

As indicated above, the Court will deny Defendant's request for compassionate release motion because his hypertension, whether viewed in isolation or as allegedly exacerbated by the ongoing COVID-19 pandemic, fails to rise to an "extraordinary and compelling" level, as that threshold is defined by case law, such that release is inappropriate at this particular time. Simply stated, Defendant has failed to demonstrate that release is appropriate in light of his current situation.

Section 3582 does not define the term "extraordinary and compelling reasons." Instead, Congress delegated that task to the Sentencing Commission. See 28 U.S.C. § 994(t) (stating that

the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). The Sentencing Commission defined "extraordinary and compelling" as it related to the BOP's discretion under the pre-First Step Act version of § 3582(c)(1)(A)(i), but this definition found in the U.S. Sentencing Guidelines Manual ("the Guidelines") § 1B1.13, is outdated. S*ee United States v. Rodriguez*, 451 F. Supp. 3d 392, 396 (E.D. Pa. 2020).

Although the relevant portions of the Guidelines predate the passage of the applicable provisions of the First Step Act, and would be advisory in any event, they provide some benchmarks for this Court's consideration. *See id*. at 397 ("[A] majority of district courts have concluded that the 'old policy statement provides helpful guidance, [but] . . . does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A).'") (*quoting Beck*, 425 F. Supp. 3d at 582). For example, the policy statement provides that a defendant may show "extraordinary and compelling" reasons for compassionate release based on the defendant's medical condition, age, family circumstances, or "other reasons." § 1B1.13, cmt. n.(1).

### A. Medical Condition

Turning to the assertions in Defendant's Motion, the Application Notes to § 1B1.13 of the Guidelines speak to conditions which would support compassionate release in the form of two (2) different medical conditions that can rise to an "extraordinary and compelling" level: (1) terminal illnesses; and (2) non-terminal conditions that substantially diminish the ability of the defendant to provide self-care within the correctional environment. Here, the Court finds that Defendant's present situation does not rise to an "extraordinary and compelling" level pursuant to either option.

### 1. Terminal Illnesses

The relevant Application Note suggests that a defendant suffers from a "terminal illness" if they are afflicted with "a serious and advanced illness with an end of life trajectory." § 1B1.13, cmt. n.(1)(A)(i). A "specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required" to prove that an illness is "terminal." *Id.* The Note provides examples of terminal illnesses provided such as: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Given this guidance, this Court finds that Defendant would not qualify for relief pursuant to such.[3]

Nothing presently before this Court suggests that Defendant's current medical condition (hypertension) is so serious or advanced in nature that it is marked by an "end of life trajectory." Therefore, the Court finds that Defendant does not qualify for relief under the "terminal illness" option as set out in Application Note (1)(A)(i).

### 2. Non-Terminal Illnesses

Similarly, the Court finds that Defendant's current, non-terminal medical condition (hypertension) when considered in combination with the ongoing COVID-19 pandemic, does not rise to an "extraordinary and compelling" level. Under the Sentencing Commission's Policy Statement, a defendant's non-terminal medical condition can present an extraordinary and compelling reason warranting release if "a defendant is suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-

---

[3] Defendant's counsel provided statistics and data concerning the number of COVID-19 cases in the United States and rate of infection among federal inmates. In addition, Defendant's counsel noted that as of October 5, 2020, 84 inmates and 64 staff members at FCI-Danbury (where Defendant is presently incarcerated, and which currently houses over 1,000 inmates) tested positive for COVID-19. Defense counsel also notes that of the 84, 83 inmates recovered, and one inmate died from the infection. ECF 234, p. 6-7. However, the Government also demonstrated that as of October 21, 2020, FCI-Danbury only has two confirmed COVID-19 cases – a fact which Defendant's counsel acknowledged in his own brief. ECF 236, p. 2, and 234 p. 6, n.12. Defendant does not claim to be one of these two positive cases.

care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.(1)(A)(ii).

In this case, Defendant's Presentence Investigation Report (ECF 134) notes that Defendant's date of birth was September 25, 1978 (making him 42 years of age today) and at the time of the report he was 5'11" tall and 190 pounds. ECF 134 at p. 3, 12. The report further indicates Defendant, "reported that he is currently in good health and not under the care of a physician." Id. at p. 12.

The Government provided some of Defendant's medical records during his period of incarceration at FCI-Danbury. ECF 236-1. These records reflect that Defendant was screened as part of a preventative health process on August 11, 2020. Id. at p. 6-8. At that time his weight was noted at 196.6 pounds and his blood pressure reading was 161/107. Id. The records also indicate that a follow up for his hypertension (high blood pressure) was conducted on September 9, 2020 (ECF 236-1, p. 3-5), September 22, 2020 (id. at p. 9), and again on October 1, 2020. Id. at p. 1-2. These records clearly reflect the fac that Defendant has been offered treatment – specifically medication – for his diagnosis of hypertension, but Defendant appears to have declined such treatment. Id.

Given all of these facts, the Court finds that Defendant's condition, in isolation, is not "serious" enough in nature to warrant release. Similarly, when considering Defendant's hypertension in combination with the ongoing COVID-19 pandemic, the Court likewise finds the combination of concerns fails to warrant relief. In *United States v. Raia*, the Third Circuit held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's . . . extensive and professional efforts to curtail the virus's spread." 954 F.3d

594, 597 (3d Cir. 2020). Here, Defendant's Motion for Compassionate Release based in part on COVID-19-related concerns has not moved beyond citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within FCI-Danbury, nor making sweeping allegations about the facility's alleged lack of ability to contain an outbreak. To the contrary, given the statistics referenced in Defendant's own brief, it appears as though FCI-Danbury has managed its initial outbreak in its facility well, by lessening the number COVID-19 cases from 84 inmates as of October 5, 2020 to only two inmates as of October 21, 2020.

### B. Authority of the BOP

Defendant's Motion urges this Court "to convert a portion of the time remaining on [Defendant's] incarceration sentence to home confinement . . .". ECF 234, p. 18. Because this Court is unable to modify the Defendant's sentence pursuant to Section 3582, the Court cannot direct the placement of Defendant at this juncture. This Court acknowledges the BOP's "exclusive authority to determine if an inmate should be placed in such a setting and, if so, for how long." *United States v. Parks*, No. 17-cr-137, 2019 WL 5085968, at *1 (N.D. Ohio Oct. 10, 2019); *see also* 18 U.S.C. § 3621 (providing the BOP with the sole authority and discretion to designate the place of a defendant's confinement).

### III. CONCLUSION

The Court does not find that an "extraordinary and compelling" reason warrants release of Defendant. Accordingly, the Defendant's counseled Motion for Compassionate Release filed pursuant to 18 U.S.C.A. § 3582(c)(1)(A)(1) at ECF No. 234, and Defendant's previously filed *pro se* Motion requesting the same relief filed at 229, are **DENIED**.

SO ORDERED, this 22nd day of October, 2020.

<u>s/Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel